# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JEFFREY STRASSER,**
        **Plaintiff,**

v.                                             Case No. 14-C-1456

**ERIC RATZMANN and RAY BOGUST,**
        **Defendants.**

## ORDER

Jeffrey Strasser brought this action under 42 U.S.C. § 1983 against Milwaukee police officers Eric Ratzmann and Ray Bogust claiming that Ratzmann used excessive force against him and that Bogust failed to intervene to prevent Ratzmann's use of excessive force. Strasser's claims were tried to a jury on March 26 and March 27, 2018. The jury returned a verdict in favor of the defendants, and the court entered judgment accordingly. Strasser moves for a new trial on two grounds that I address in turn.

### I. Evidentiary Error

First, Strasser argues that I erred in excluding certain evidence from trial. But, "[u]nless justice requires otherwise, no error in admitting or excluding evidence . . . is ground for granting a new trial." Fed. R. Civ. P. 61. "A new trial is warranted only if the error has a substantial and injurious effect or influence on the determination of a jury, and the result is inconsistent with substantial justice." *Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012) (quoting *Cerabio LLC v. Wright Med. Tech., Inc.*, 410 F.3d 981, 994 (7th Cir. 2005)). "Evidentiary errors satisfy this standard only when a significant chance exists that they affected the outcome of the trial." *Id.* (quoting *E.E.O.C. v. Mgmt. Hosp. of Racine, Inc.*, 666 F.3d 422, 440 (7th Cir. 2012)).

During trial, Strasser learned that defendants had not disclosed that Ratzmann was suspended without pay for 33 working days in September 2017 for violating the Milwaukee Police Department's Code of Conduct by failing to treat the public with courtesy and professionalism and failing to activate his body-worn camera. Strasser moved to sanction defendants for not disclosing Ratzmann's suspension during discovery, to question Ratzmann about his suspension outside the presence of the jury, and to admit evidence of the suspension at trial. I denied Strasser's motions citing a prior order in this case in which I granted defendants' motion in limine to exclude evidence of other alleged misconduct and uses of force by Ratzmann as inadmissible character evidence based on other acts, Fed. R. Evid. 404(b)(1), and because whatever probative value the evidence might have had was substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury, Fed. R. Evid. 403.

Strasser argues that the nature and severity of Ratzmann's suspension "makes it likely [that] some allegation of use of force was at issue" and that, by excluding evidence of the suspension from trial, I denied him the opportunity to "argue to the jury [that] nothing short of a jury verdict could deter [Ratzmann] from additional improper uses of force" in the future. Pl.'s Motion, ECF No. 101, at 3. Even assuming Ratzmann was suspended in 2017 due to a use of force, evidence of that "wrong" or "other act" would have been inadmissible to prove that he used excessive force against Strasser in 2012, as Strasser claimed. Fed. R. Evid. 404(b)(1). Indeed, such evidence would only have been admissible for purposes of the jury's assessment of punitive damages against Ratzmann, which could have been based on "the likelihood that [he] would repeat the conduct absent an award of punitive damages," *see Alexander v. City of*

*Milwaukee*, 474 F.3d 437, 454 (7th Cir. 2007). As the jury found that Ratzmann was not liable for using excessive force against Strasser, it never reached the issue of damages. Therefore, excluding evidence of Ratzmann's 2017 suspension could not have permissibly affected the outcome of the trial, even if I did somehow err in excluding it.

Strasser also states that he "was denied key impeachment evidence about Defendant Ratzmann's 33-day suspension in 2017," Pl.'s Motion, *supra*, at 6, but he does not elaborate or explain how any evidence that defendants failed to disclose or that I excluded from trial would have been admissible for purposes of attacking any witness's credibility. *See* Fed. R. Evid. 607. "Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority," *M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017), so Strasser's bald assertion that I or defendants deprived him of "impeachment evidence" is insufficient to show that he is entitled to a new trial.

## II. Verdict Against the Weight of the Evidence

Second, Strasser argues that the verdict was against the weight of the evidence. In deciding whether to "grant a new trial on weight grounds," a district court "has the power to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial." *Mejia v. Cook County*, 650 F.3d 631, 633 & n.1 (7th Cir. 2011). "If, after evaluating the evidence, the district court is of the opinion that the verdict is against the manifest weight of the evidence, a new trial is appropriate." *Id.* at 633. The "manifest weight" standard reflects "a certain deference to the jury's conclusions," as does the fact that the district court is, for the most part, "bound to the same evidence the jury considered." *Id.* at 633 & n.1.

Ultimately, though, "[a] motion for a new trial is committed to the sound discretion of the judge who presided over the trial." *Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*, 733 F.3d 722, 730 (7th Cir. 2013).[1]

According to Strasser, video evidence of Ratzmann's use of force against him, which was repeatedly shown at trial, establishes that Ratzmann punched him in the back of the head twice and slapped him in the face while he was lying prone on the ground, either not resisting or only passively resisting. Because the Constitution permits police officers to use "only a minimal amount of force" against "nonresisting or passively resisting suspects," *see Abbott v. Sangamon County*, 705 F.3d 706, 732 (7th Cir. 2013), Strasser says, Ratzmann's use of force against him was excessive and, therefore, unconstitutional. Indeed, he argues, "[n]o rational jury could view that evidence and conclude that the force [used] . . . was reasonable." Pl.'s Reply, ECF No. 103, at 1.

Defendants argue that the image quality of the video is poor and that, at any rate, it does not show the entire series of events that led to the use of force, as established by other evidence:

> At trial, multiple witnesses testified that the plaintiff turned his car, a potentially deadly weapon, and drove directly at the approaching officers. The [defendants] testified that they initially approached the plaintiff's vehicle after learning that he refused to pull over his car for [another officer]. Officers Ratzmann and Bogust both testified at trial that the plaintiff then refused orders to exit the vehicle. The officers also testified that the plaintiff was reaching towards the center console, a location where a weapon may be stored, when they tried to get him out of the vehicle. The officers further testified that the plaintiff refused to give them

---

[1] Defendants seek to impose a heavier burden, arguing that "[a] verdict [may] be set aside as contrary to the manifest weight of the evidence only if 'no rational jury' could have rendered the verdict." *Moore ex rel. Estate of Grady v. Tuelja*, 546 F.3d 423, 427 (7th Cir. 2008) (quoting *King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006)). But this is the standard applied by the Seventh Circuit when reviewing a district court's "denial of a motion for a new trial for abuse of discretion," *id.*, not the standard applied by the district court in addressing the motion in the first place.

4

> his hands and was reaching towards his waistband, where a weapon could be located, when the focus strikes were administered.

Defs.' Opp'n Br., ECF No. 102, at 7. Moreover, defendants note that, while Strasser claims that he was "struck . . . in the head," defendants "testified at trial that [he] was instead struck in the shoulder," which makes sense given the lack of evidence at trial of "any lasting injuries . . . consistent with a head injury." *Id.* Thus, defendants say, the evidence supports the jury's verdict that Ratzmann did not use excessive force.

The evidence presented at trial is generally clear and consistent as to many of the events leading up to Strasser's physical altercation with defendants. For instance, Strasser testified, and defendants did not meaningfully dispute, that he was driving a friend's car, that he was unfamiliar with many of its features, and that he was under the influence of alcohol. Similarly, defendants and other officers testified, and Strasser did not seriously dispute, that he did not immediately pull over and stop when a squad car signaled him to do so but that he turned into a parking lot.

Once Strasser pulled into the parking lot, the various eyewitness accounts given at trial diverge. Strasser's narrative went roughly as follows: When he parked, defendants ran up to the car and started yelling and banging on the windows, but he struggled to unlock the doors given his unfamiliarity with the vehicle. Once he managed to unlock the car doors, defendants forcibly removed him from the car, threw him to the ground, and repeatedly hit him, even though he was not, at any point, resisting arrest.

Defendants' version of the events went somewhat differently: Strasser did not stop when he pulled into the lot, but instead turned the car toward them and drove at them. Once the car came to a complete stop, they approached and instructed Strasser to exit the vehicle, but he refused, at first, to unlock the doors. When Strasser unlocked

5

the doors, he did not get out of the car but reached further into it, so defendants tried to remove him, which caused all three parties to fall to the ground. Strasser continued to resist, but defendants were able to secure his hands in handcuffs and effectuate his arrest in part through the targeted use of two quick strikes to the back of his shoulder.

In the absence of any other evidence, I could not grant Strasser a new trial. While I generally found him to be a more credible witness than defendants, in much of his testimony he simply offered explanations for his behavior that defendants could not have known about at the time. For example, defendants could not have known that he was struggling to unlock the doors to an unfamiliar car, so it was reasonable for them to infer that he was, instead, refusing to comply with their orders. As for whether Strasser actively resisted arrest, the jury could have credited defendants' testimony rather than his and found that the limited use of force to gain his compliance was reasonable. Whether I would have made the same finding is immaterial, as a district court "cannot grant a new trial just because it believes the jury got it wrong," especially where a verdict turns on "the credibility of witnesses," an issue "peculiarly for the jury." *Whitehead*, 680 F.3d at 928 (quoting *Latino v. Kaizer*, 58 F.3d 310, 315 (7th Cir. 1995)).

As Strasser's arguments imply, that there is video evidence of the use of force at issue here means that the trial in this case was not merely "a credibility-based decision" such that granting a new trial would be a clear "invasion of the jury's province." *Latino*, 58 F.3d at 317. Even so, defendants are correct that the video is simply too unclear to warrant a new trial. As defendants note, the image quality of the video is quite poor—the video was recorded on a cellphone, at night (in poor lighting), by a bystander whose movements caused considerable blurring. As a result, the video does not conclusively

show where Ratzmann struck Strasser, that is, whether Ratzmann hit him on the head, shoulder, or elsewhere (e.g., on the back of the neck). The video also does not conclusively show whether Ratzmann slapped Strasser, though it documents an action by Ratzmann that could have been a slap. Finally, the video does not conclusively show whether Strasser was resisting arrest when Ratzmann struck him the first time or during the intervening moment before Ratzmann struck him again.

In considering whether "[a]n officer's use of force . . . was reasonably necessary to effectuate [an] arrest," courts must "bear in mind . . . that 'police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519–20 (7th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Moreover, where, as here, a jury considered evidence presented at trial of "the totality of the circumstances at the time of [an] arrest," *id.* at 519, found that an officer's use of force under those circumstances was not unreasonable, and "spoke its verdict" accordingly, "the Seventh Amendment affords it very considerable deference." *Latino*, 58 F.3d at 317. Here, Strasser has not shown that the evidence weighs so heavily in his favor as to overcome that deference.

### III. Conclusion

For the reasons set forth above, **IT IS ORDERED** that the plaintiff's motion for a new trial (ECF No. 101) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 2nd day of July, 2018.

s/Lynn Adelman
LYNN ADELMAN
District Judge

7